Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
400 Concar Drive
San Mateo, CA 94402
(650) 781-0025
jake@blockleviton.com

*Counsel for Lead Plaintiff Luis Collazos*
*And Lead Counsel for the Class*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SEMTECH CORPORATION SECURITIES LITIGATION<br><br>This Document relates to:<br><br>ALL ACTIONS | Master File No.: 2:25-cv-01474-MSC-JC<br><br><u>CLASS ACTION</u><br><br>**LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE**<br><br>Judge: Hon. Mark C. Scarsi<br>Hearing: September 22, 2025<br>Time: 9:00 a.m.<br>Courtroom: Courtroom 7C |

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS'
REQUEST FOR JUDICIAL NOTICE

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................1

II.  LEGAL STANDARD ................................................................................3

III.  ARGUMENT................................................................................................4

    A.  Defendants Do Not Establish Exhibits 2, 4, 5, and 14 Are the Proper Subjects of Incorporation-by-Reference or Judicial Notice. ......................................................................................4

    B.  Lead Plaintiff Does Not Oppose Judicial Notice or Incorporation by Reference of Exhibits 3, 6, 7, 8, 9, 10, 11, 12, and 13, Provided They Are Not Considered for the Truth of Matters Stated Therein. .......................................................11

    C.  If the Court Considers the Disputed Documents, It Should Convert Defendants' Motion to Dismiss Into a Motion for Summary Judgment and Permit Discovery.........................................12

IV.  CONCLUSION............................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
    189 F.3d 971 (9th Cir. 1999) ...............................................................................5

*Hsu v. Puma Biotechnology, Inc.*,
    213 F. Supp. 3d 1275 (C.D. Cal. 2016) ................................................. 2, 3, 6, 9

*In re Infonet Servs. Corp. Sec. Litig.*,
    310 F. Supp. 2d 1106 (C.D. Cal. 2003) ...............................................................5

*In re Mattel, Inc. Sec.* 2021 WL 1259405 (C.D. Cal. Jan. 26, 2021) ............. 1, 5, 11

*Jones v. Morris Cty. Corr. Facility*,
    2007 WL 1118342, at *3 (D.N.J. Apr. 13, 2007) ...............................................13

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ....................................................................... passim

*Pampena v. Musk*,
    705 F. Supp. 3d 1018 (N.D. Cal. 2023) ...............................................................1

*Rollins v. Dignity Health*,
    338 F. Supp. 3d 1025 (N.D. Cal. 2018) ...............................................................3

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) ...............................................................4

*Wochos v.* 2019 WL 1332395 (N.D. Cal. Mar. 25, 2019) ........................................9

**Rules**

Fed. R. Civ. P. 12(d) ...................................................................................... 2, 3, 12

## I.   INTRODUCTION

Defendants seek to introduce numerous extrinsic documents neither mentioned in the Consolidated Class Action Complaint ("CC") nor derived from unquestionably reliable sources to support an attack on the facts as alleged. Defendants misconstrue the procedures of judicial notice and incorporation by reference as broad licenses to step outside the ordinary rule that "evaluating a motion to dismiss, a court 'must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party.'" *Pampena v. Musk*, 705 F. Supp. 3d 1018, 1036–37 (N.D. Cal. 2023).

Lead Plaintiff opposes Defendants' Request for Judicial Notice and Incorporation by Reference ("Request," ECF No. 55) with respect to Exhibits 2, 4, 5, and 14, which are not incorporated by reference in the CC, are not proper subjects of judicial notice, and have been introduced improperly to contest the factual allegations of the CC. Lead Plaintiff does not dispute that Exhibits 3, 6, 7, 8, 9, 10, 11, 12, and 13 may be considered as either incorporated by reference or as judicially noticeable for their existence, with the limitation that the contents of these documents may not be noticed for the truth of the matters asserted therein or to dispute factual allegations.[1] If the Court chooses to consider the disputed Exhibits, Lead Plaintiff requests that Defendants' Motion to Dismiss ("Motion") be converted into a motion for summary judgment under Fed. R. Civ. P. 12(d), and the parties be given a full and fair opportunity to engage in discovery.

In *In re Mattel, Inc. Sec. Litig.*, 2021 WL 1259405, at *6 (C.D. Cal. Jan. 26, 2021), this Court followed *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), where the Ninth Circuit found "a concerning pattern in securities cases

---

[1] The Exhibits are attached to the Declaration of Sarah Hemmendinger in Support of Defendants Semtech Corporation, Hong Q. Hou and Mark Lin's Motion to Dismiss as ECF Nos. 56-2 through 56-14.

LEAD PL.'S OPP. TO DEFS.' REQUEST                                    1
FOR JUDICIAL NOTICE

like this one: exploiting these procedures [Judicial Notice and Incorporation by Reference] improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Id.* at 998. The Court warned:

> The overuse and improper application of judicial notice and the incorporation-by-reference doctrine, however, can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery. This risk is especially significant in SEC fraud matters, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access.

*Id*, 899 F.3d at 998.

Despite this Court's and the Ninth Circuit's unambiguous caution, the "concerning pattern" has not abated, and Defendants here push the boundaries of judicial notice and incorporation by reference beyond their narrow purposes and scope.[2]

---

[2] Noting the "inappropriate efforts by defendants to expand the two doctrines," this District has lamented:

> Nowadays, it seems more and more common to come across Rule 12(b)(6) motions to dismiss filed with hundreds of pages of attachments . . . coupled with a request for judicial notice. That judicial notice will often conflate judicial notice and incorporation by reference. Too often, these mountainous motions make arguments more appropriate for a motion for summary judgment or some other later stage of the case. Nonetheless, with little to lose, too many defense attorneys are tempted by the puncher's chance offered by such a motion. . . . Such trends are particularly troubling in the common situation of asymmetry, where a defendant starts off with sole possession of the information about the alleged wrongdoing.

*Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1281-82 (C.D. Cal. 2016).

## II.   LEGAL STANDARD

"Generally, district courts may not consider material outside of the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja*, 899 F.3d at 998. Typically, if extraneous material is presented on a motion to dismiss and not excluded, a court must convert the 12(b)(6) motion into a motion for summary judgment and allow both parties the opportunity "to present all the material that is pertinent to the motion." *Id.*; Fed. R. Civ. P. 12(d).

There are two exceptions to the general rule. First, under the "explicitly limited" and "narrow doctrine" of judicial notice, *Puma Biotechnology*, 213 F. Supp. 3d at 1280, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1031 (N.D. Cal. 2018) (citing Fed. R. Evid. 201(b)). "For example, a court might take judicial notice that January 4, 1986, was a Saturday, or that a party filed a brief opposing a motion in a state court case, or that a particular document was recorded with the county recorder's office." *Puma Biotechnology*, 213 F. Supp. 3d at 1280. While a court may include in their review of a Rule 12(b)(6) motion to dismiss matters over which they may take judicial notice, "a court cannot take judicial notice of disputed facts" contained in such documents. *Khoja*, 899 F.3d at 999 ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").

Second, a court may also "treat[] certain documents as though they are part of the complaint itself," where those documents "form[] the basis of the plaintiff's claim[s]" or where plaintiffs reference them "extensively" throughout their complaint. *Id.* at 1002. But given "the prohibition against resolving factual disputes

at the pleading stage," it is "improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1003.

## III.    ARGUMENT

### A.    Exhibits 2, 4, 5, and 14 Are Not Properly Subject to Incorporation-by-Reference or Judicial Notice.

Defendants do not claim or establish that Exhibits 2, 4, 5, or 14 are incorporated by reference in the CC, nor that their accuracy may not be reasonably questioned.[3] Instead, Defendants' Request asserts that Exhibits 2, 4, and 5 have been introduced to "illustrate publicly available information regarding the NVL 36x2 rack configuration" and are judicially noticeable for that narrow purpose. Request at 2-3.

Defendants instead seek to introduce these Exhibits to establish the truth of the facts stated therein (or at least Defendants' interpretation of those facts). *See* Motion at 10 (citing Exhibits 4 and 5 for proposition that "judicially noticeable public sources show that Nvidia continued to promote the NVL36x2 well after Kuo's report"). Exhibit 14 is more vaguely introduced to give "context" to the CC, in the form of extraneous facts. Request at 4.

As Defendants' own authority, when quoted in its entirety, makes clear, "the court can [judicially notice documents] only to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1231 (C.D. Cal. 2015) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d

---

[3] Exhibit 2 is a webpage which Defendants downloaded on August 7, 2025. ECF No. 56-2. Exhibit 4 is an article from *Tom's Hardware* dated January 7, 2025. ECF No. 56-4. Exhibit 5 is a transcript downloaded from *FactSet* of keynote remarks made by Nvidia Corporation Chief Executive Officer Jen-Hsun Huang at a January 6, 2025 "Consumer Electronics Show." ECF No. 56-5. Exhibit 14 is a Form 13F Holdings Report which Lion Point Capital, L.P. filed with the SEC on August 14, 2024. ECF No. 56-14.

954, 960 (9th Cir.2010)); *see also Mattel*, 2021 WL 1259405, at *6 ("The Court may consider exhibits … to determine 'whether and when certain information was provided to the market,' but not for the truth of the matters asserted.") (citation omitted).

Taking Defendants at their word that judicial notice of Exhibits 2, 4, and 5 is appropriate merely to "illustrate publicly available information," the Exhibits should not be noticed because such an illustration serves no purpose in this case (nor do Defendants use them for that reason). The fact that certain information was public can be relevant in other contexts, which is why it is sometimes appropriate to judicially notice that certain statements entered the public consciousness at certain times. For example, extrinsic documents can be useful where statute of limitations issues arise to show when plaintiffs "were on inquiry notice" of their claims. *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1115 (C.D. Cal. 2003). The question of when certain information entered the market can also be particularly relevant in a securities case if defendants argue that "the market ha[d] become aware of the allegedly concealed information," and therefore use extrinsic documents to establish that "the facts allegedly omitted by the defendant would already be reflected in the stock's prices and the market will not be misled." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 975-76 (9th Cir. 1999) (internal quotation marks omitted); *see id.* at 981 n.18 (taking judicial notice of publicly available documents to establish what "market was aware of" to demonstrate that allegedly omitted information was in fact available to investors).

Here, however, Defendants make no such arguments. The timing or content of information conveyed to the public by third parties is not relevant to any issues Defendants raise. The Motion does not contend that the truth was already available from other sources, for instance, and the Exhibits certainly do not support such a conclusion. Whether Jen-Hsun Huang's statements were made publicly or privately, for insance, makes no difference for the fact Defendants attempt to use Exhibit 5 to

establish: that Nvidia was still considering the 36x2 architecture. The only issue here is what information Defendants knew but did *not* make publicly available.

To the extent Exhibits 2, 4, 5, and 14 could be noticeable at all, then, the only noticeable facts are that these documents exist in the public realm, which has no relevance to this action. "Judicial notice under Rule 201 permits a court to notice an adjudicative fact," but "[a]n irrelevant fact could hardly be an 'adjudicative fact.'" *See Khoja*, 899 F.3d at 999-1000 & n.5 (cleaned up). Accordingly, these Exhibits' only relevance to this litigation is Defendants' reliance on them to establish the facts contained therein, but Circuit precedent forecloses that purpose. *See, e.g., id.,* at 1000, 1002 ("[A] court cannot take judicial notice of disputed facts contained in public records" or "assume the truth of an incorporated document").

**Exhibit 2**, a capture of an Nvidia webpage, ECF No. 56-2, is illustrative. There is no indication of the date on which the "article" was first published. *See* ECF No. 56-2. The only date available on the document is from April 2025, months after the class period. *Id.* at 4. It is unclear, then, how Exhibit 2 could serve to "illustrate publicly available information" if there is no indication of when it was first available or if it was publicly available during the class period. *See Puma Biotechnology*, 213 F. Supp. 3d at 1283-84 (agreeing that webpage "captured" months after the class period not noticeable and "being publicly available online doesn't mean a document is a 'source … whose accuracy cannot be reasonably questioned'").

Instead, Defendants' only citation to Exhibit 2 is in the factual "BACKGROUND" section of the Motion, to show a graphic of the possible Nvidia rack configurations. Motion at 3. While the graphic is not objectionable, this is neither a permissible purpose for the document nor is it consistent with Defendants' stated purpose for including it in their Motion. *See* Request at 2. Lead Plaintiff does not oppose the use of the graphic, but he objects to any further use of the Exhibit 2 (*e.g.*, on reply) or any suggestion that its contents establish that Nvidia was, contrary to the CC, planning to support the 36x2 configuration at the time Defendants

misspoke.

Even if accepted for that improper purpose, however, the webpage says nothing relevant. It states only that Grace-Blackwell systems could be configured in a 36x2 arrangement. ECF No. 56-2. It is undisputed that Nvidia's Grace-Blackwell systems *could* be configured in a 36x2 arrangement. As Lead Plaintiff himself alleges, before the class period Nvidia "initially offered three rack-scale configurations" including the "NVL36x2." CC ¶5. Plus, as the Ming-Chi Kuo report itself acknowledged in reporting that Nvidia was halting development of the NVL36x2 rack, "*unless there are customized requirements*, Nvidia will only offer the single-rack version of GB200 NVL72 . . . discontinuing the dual rack version (NVL32*2)." CC ¶89 (emphasis added). The issue here is not whether that configuration was possible or *ever* offered by Nvidia, but why Defendants chose to dispute Nvidia's "rack architecture changes" until February 2025. *Id.* ¶25.

Defendants use **Exhibits 5 and 4**, respectively a transcript of comments made by Nvidia's CEO, Jen Hsun Huang, at a January 6, 2025 Consumer Electronics Show, ECF No. 56-5, and associated commentary published online by *Tom's Hardware* the next day, ECF No. 56-4, to argue that the Kuo Report and CC are incorrect about the 36x2 rack's "discontinuation" being a "*fait accompli.*" Motion at 10. Putting aside that these events occurred after all but two of Defendants' misstatements, *see* CC ¶¶121-34, and that Defendants' use of these documents relies on the truth of their contents, not the fact of their publication, there is an additional problem: Defendants take Nvidia's statements out of context and misinterpret them.

Defendants seize on Huang's mention of the "NV[L]36x2" architecture in Exhibit 5 as evidence that Nvidia had not yet ended support for that configuration as of January 6, 2025, contrary to the CC's allegations, Motion at 10, but that is not at all what Huang said. In full context, Huang was only commenting on the *possible* configurations for the Blackwell GPU, of which he said there were "about 200 different configurations" computer makers had come up with, including the 36x2:

LEAD PL.'S OPP. TO DEFS.' REQUEST                                    7
FOR JUDICIAL NOTICE

> We have systems here from about 15 – excuse me, *15 computer makers.*
> *It's been made about 200 different SKUs, 200 different configurations.*
> They're liquid-cooled, air-cooled, x86 NVIDIA Grace CPU versions,
> NVLink 36x2, NVLinks 72x1, whole bunch of different types of
> systems so that we can accommodate just about every single data center
> in the world. Well, these systems are being currently manufactured in
> some 45 factories.

ECF No. 56-5 at 6-7 (emphasis added). Again, the Kuo Report made clear that the 36x2 rack server could be available for "customized requirements" although Nvidia would not otherwise support it. CC ¶11. Nvidia plainly was not planning to support two hundred rack configurations, however, as even before cancelling support for the 36x2, Nvidia only said it would support three configurations. CC ¶5. There is no basis to infer Huang's statements meant Nvidia was planning to support the 36x2 configuration simply because he used it as an example of one of the two hundred possible Blackwell configurations *others* had made.

Indeed, Defendants omit that Huang then went on to discuss Nvidia's role in building *only* the "GB200 NVLink 72" configuration, not the 36x2, clarifying that the "NVLink 72" was the system "being manufactured in 45 factories around the world. We build them, we liquid-cool them, we test them, we disassemble them … [w]e reassemble it outside the data centers and install them." ECF No. 56-5 at 7. He did not similarly say that "we," Nvidia, would build or test or install 36x2 architecture. *Id.*

Accordingly, as with Exhibit 2, Exhibit 5 only establishes a point that is not in dispute: the Blackwell systems *could* be arranged in a 36x2 configuration. But the document does not support the improper, extrinsic facts Defendants read into it, and even this misinterpretation of Huang's statements could not explain Defendants' state of mind when they began to dispute Kuo's reporting months earlier.

Exhibit 5 is relevant here, then, only if it is accepted for the truth of facts it does not contain. Defendants' justification that the Exhibit is meant to "demonstrate the publicly available information" appears to be a thin pretext simply to dispute the

LEAD PL.'S OPP. TO DEFS.' REQUEST                                                    8
FOR JUDICIAL NOTICE

fact that Nvidia was no longer supporting the 36x2 rack system. As this District has previously cautioned, however:

> Unfortunately, too many attorneys don't understand judicial notice. Some take judicial notice literally, as a command. 'Hey! Judge! Look!' They use judicial notice to get a court's attention like a businessman who's running late and trying to whistle down a taxi on a crowded downtown street. But courts aren't cabbies, and judicial notice isn't appropriately used this way.

*Puma Biotechnology*, 213 F. Supp. 3d at 1280.

As for Exhibit 4, Defendants offer no justification for why *Tom's Hardware* is a source "whose accuracy cannot reasonably be questioned" insofar as it interpreted Huang's statements. *Wochos v. Tesla, Inc.*, 2019 WL 1332395, at *2 (N.D. Cal. Mar. 25, 2019), *aff'd*, 985 F.3d 1180 (9th Cir. 2021). Under Defendants' broad concept of judicial notice, any commentary voicing an opinion on a matter at odds with a plaintiff's allegations could be brought in on a Fed. R. Civ. P. 12(b)(6) motion so long as it was publicly available. But Exhibit 4 makes the same error Defendants do with Exhibit 5, drawing unwarranted conclusions about the 36x2 configuration from the mere mention that it was one of two hundred possible arrangements computer makers had tried.

The article's author, Anton Shilov, simply requotes what Nvidia's CEO Huang said in Exhibit 5 and then claims, without any basis, that "some companies either produce dual rack NVL36x2 systems today or plan to do so in the future." ECF No. 56-4 at 4. Shilov neither identifies a single company producing the dual rack system nor who might plan on producing them in the future. Again, simply because Huang noted there were two hundred different possible configurations for the Blackwell GPU, which included the 36x2 server, does not mean that Nvidia was supporting such a configuration.

Indeed, just because someone on the internet speculated that, notwithstanding "earlier reports" of Nvidia cancelling the 36x2, "[a]pparently, this is not the case," ECF No. 56-4 at 4, this does not become a reliable fact a court can accept for its

truth. Yet this is the only "fact" concerning Exhibit 4 Defendants cite, *see* Motion at 10, and it is disputed. The article turned out to be wrong, by Semtech's own admission made just a few weeks later. *See* CC ¶¶136–40.

Furthermore, Shilov's article demonstrates the complications of opening factual floodgates that *Khoja* warned should be kept closed. Just considering this one author's other works, Defendants' cherry-picked counter-narrative leaves out that, in another posting on October 1, 2024, Shilov wrote of Kuo: "He's a reputable analyst and appears to have inside information on the matter," and therefore came to the conclusion that Nvidia had "now pivoted to NVL72 and NVL36 racks" and that "focusing on a GB200-based NVL72 design aimed at the most demanding customers looking for maximum performance makes absolute sense for Nvidia." *See* Decl. of Jacob A. Walker In Supp. of Lead Pl.'s Opp. to Defs.' Request for Judicial Notice ("Walker Decl.") Ex. A at 2-4. Shilov also posted an article on October 15, 2024, stating that Meta was planning its "Catalina AI rack architecture . . . on the GB200 NVL72 system." Walker Decl. Ex. B at 3-4. These are the factual disputes the Court simply cannot wade into at this stage.

Defendants introduce **Exhibit 14**, Lion Point Capital's August 14, 2024 Form 13-F, purportedly to "provid[e] context relevant to Plaintiff's allegations." Request at 4. Defendants improperly use Exhibit 14 for the truth of its contents. Defendants' only reference to Exhibit 14 is as a citation for the representation that "Lion Point did not hold any company stock at the time the challenged statements were made." Motion at 19 n.5.[4] This extraneous factual assertion is both of little relevance to the questions before the Court on the Motion to Dismiss and an improper use of judicial notice.

---

[4] Even for this purpose, a filing concerning Lion Point's holdings in August 2024 would not establish Lion Point lacked an interest in Semtech during the October 10, 2024 to February 7, 2025 class period.

Accordingly, because they lack any relevance if used for their stated purposes, and because Defendants in fact use them for purposes that are improper under controlling law, the Court should decline to judicially notice Exhibits 2, 4, 5, and 14. *See Khoja*, 899 F.3d at 998-99.

**B.    Lead Plaintiff Does Not Oppose Judicial Notice or Incorporation by Reference of Exhibits 3, 6, 7, 8, 9, 10, 11, 12, and 13, Provided They Are Not Considered for the Truth of Matters Stated Therein.**

Lead Plaintiff does not oppose the Court's consideration of Exhibits 3 (Ming-Chi Kuo's October 1, 2024 report, ECF No. 56-3), 6 (an October 10, 2024 Benchmark Company analyst report, ECF No. 56-6), 7 (an October 22, 2024 Piper Sandler & Co. analyst report, ECF No. 56-7), 8 (a January 11, 2025 Roth Capital Partners analyst report, ECF No. 56-8), 9 (a January 21, 2025 Needham & Co. analyst report, ECF No. 56-9), or 10 (a transcript of Semtech's November 25, 2024 earnings call, ECF No. 56-10) under the doctrine of incorporation by reference. Nor does Lead Plaintiff oppose consideration of Exhibits 11–13 (Semtech's SEC filings containing cautionary language, ECF Nos. 56-11, 56-12, 56-13) under the doctrine of judicial notice.

But such consideration must be limited to the fact that such documents were published and should not include the truth of matters asserted within them. *See Mattel*, 2021 WL 1259405, at *6 (considering documents under judicial notice and incorporation by reference "but not to the extent they are proffered to 'resolve factual disputes against the plaintiff's well-plead allegations in the complaint.'") (citation omitted). Defendants assert, to the contrary, that when a document is incorporated by reference, a court "may assume that its contents are true." Request at 5 (quoting *Okla. Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *14 (C.D. Cal. Apr. 14, 2015)). That is, at best, an overstatement of the law. *See Khoja*, 899 F.3d at 1003 (it is "improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint"). If Defendants' oversimplification were true, no fraud claim would be viable, as any

document alleged to be fraudulent in a complaint would necessarily be incorporated by reference, and therefore automatically rendered true and non-fraudulent.

Lead Plaintiff therefore opposes the use of these documents to the extent Defendants seek to introduce any Exhibit "to resolve factual disputes against [Lead] [P]laintiff's well-pled allegations in the complaint." *Khoja*, 899 F.3d at 1014; *see also In re Am. Apparel, Inc. Shareholder Litig.*, 855 F. Supp. 2d 1043, 1062 n.143 (C.D. Cal. 2012) ("The court takes judicial notice of only of the existence and contents of the SEC filings, not the truth of information contained in them.").

Lead Plaintiff in particular opposes Defendants' use of **Exhibit 7**, an October 22, 2024 Piper Sandler analyst report. ECF No. 56-7. Defendants cite Exhibit 7 for the truth of the analyst's conclusion that the 36x2 architecture was "Alive and Well" because Meta demonstrated a 36x2 configuration at OCP. Motion at 10. An analyst's report is not properly noticeable for the truth of its opinions or conclusions, nor for the embedded hearsay within. ECF No. 56-7 at 1 (describing the purpose of Meta's demonstration as being "so other data center[s]" could reference the configuration); *Khoja*, 899 F.3d at 999 (district court could consider analyst reports only to show that securities analysts followed and wrote reports about the company and the dates on which alleged misrepresentations were made to the market, and SEC filings to demonstrate the price of shares listed in a registration statement, not to resolve any facts set forth therein). Plus, the Piper Sandler report is in contradiction with Shilov's report from Tom's Hardware, that Meta's Catalina was using the NVL72 system. This conflict underscores why the Court should not wade into questions of disputed issues of fact on a Rule 12(b)(6) motion.

**C.   If the Court Considers the Disputed Documents, It Should Convert Defendants' Motion to Dismiss Into a Motion for Summary Judgment and Permit Discovery.**

Should the Court choose to consider the contested extrinsic materials, or disputed facts in any extrinsic document, the proper procedure would be to convert Defendants' 12(b)(6) motion into a motion for summary judgment and permit

discovery. Fed. R. Civ. P. 12(d) provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Under such circumstances, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Otherwise, accepting the disputed materials and converting the Motion into a motion for summary judgment "without allowing Plaintiff further opportunity to respond with additional facts would subvert the policy against summary judgment by ambush" *Jones v. Morris Cty. Corr. Facility*, 2007 WL 1118342, at *3 (D.N.J. Apr. 13, 2007).

## IV.  CONCLUSION

Lead Plaintiffs respectfully request that the Court deny the Request with respect to Exhibits 2, 4, 5, and 14, and to the extent Defendants ask the Court to accept the truth of matters asserted in the remaining Exhibits. In the alternative, Lead Plaintiff requests that the Court convert the Motion into a motion for summary judgment and permit the parties to take discovery.

August 25, 2025                          Respectfully submitted,

_/s/ Jacob A. Walker_
Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
400 Concar Drive
San Mateo CA 94402
(650) 781-0025
jake@blockleviton.com

Jeffrey C. Block (*pro hac vice forthcoming*)
Michael D. Gaines (*pro hac vice forthcoming*)
Zoe van Vlaanderen (*pro hac vice forthcoming*)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com

michael@blockleviton.com
zoe@blockleviton.com

*Counsel for Lead Plaintiffs and Lead Counsel
for the Class*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff certifies that this brief contains 4026 words, which complies with the word limit of L.R. 11-6.1.


August 25, 2025                                      Respectfully submitted,

                                                    /s/ Jacob A. Walker
                                                    Jacob A. Walker