Sara B. Brody (SBN 130222)
sbrody@sidley.com
Jaime A. Bartlett (SBN 251825)
jbartlett@sidley.com
Sarah A. Hemmendinger (SBN 298659)
shemmendinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

*Attorneys for Defendants*
*Semtech Corporation, Hong Q. Hou,*
*Mark Lin*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SEMTECH CORPORATION SECURITIES LITIGATION,<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 2:25-cv-01474-MCS-JC<br><br>**DEFENDANTS SEMTECH CORPORATION, HONG Q. HOU AND MARK LIN'S REPLY ISO MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>*[Filed concurrently with Reply in Support of Request for Judicial Notice; Reply Declaration of Sarah Hemmendinger]*<br><br>Judge: Hon. Mark C. Scarsi<br>Date: September 22, 2025<br>Time: 9:00 a.m.<br>Location: Courtroom 7C |

DEFENDANT SEMTECH
CORPORATION'S NOTICE OF MOTION
AND MOTION TO DISMISS
CASE NO. 2:25-CV-01474-MCS-JC

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ..................................................................................... 1

II.   DISCUSSION.......................................................................................... 1

    A.   No Challenged Statement Was False or Misleading When Made............. 1

    B.   Plaintiff's Challenge to Analyst Paraphrases Fails.................................... 5

    C.   Nearly All Challenged Statements Fall within the Safe Harbor................ 6

    D.   The Challenged Statements Are Opinions. ............................................... 7

    E.   Plaintiff Fails to Plead Scienter.............................................................. 8

DEFENDANTS SEMTECH CORPORATION,
HOU, AND LIN'S REPLY ISO MOTION TO
DISMISS - CASE NO. 2:25-CV-01474-MCS-JC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barbera v. WMC Mortg. Co.*,
2006 WL 167632 (N.D. Cal. Jan. 19, 2006)........................................................4

*In re Eventbrite, Inc. Sec. Litig.*,
2020 WL 2042078 (N.D. Cal. Apr. 28, 2020)...................................................2, 3

*Janus Capital Grp., Inc. v. First Deriv. Traders*,
564 U.S. 135 (2011)............................................................................................5

*Macomb Cty. Emps' Ret. Sys. v. Align Tech., Inc.*,
39 F.4th 1092 (9th Cir. 2022) ............................................................................3

*In re Nimble Storage Sec. Litig.*,
2017 WL 4355570, at 3 n.9 (N.D. Cal. Oct. 2, 2017) ..........................................5

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004) ............................................................................5

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)............................................................................................7

*In re Portal Software, Inc. Sec. Litig.*,
2005 WL 1910923 (N.D. Cal. Aug. 10, 2005) ....................................................8

*In re Rigel Pharmaceuticals, Inc. Sec. Litig*,
697 F.3d 869 (9th Cir. 2012) ..............................................................................8

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018) ..............................................................................8

*Wochos v. Tesla*,
985 F.3d 1180 (9th Cir. 2021) ............................................................................6

**Statutes & Rules**

15 U.S.C. § 78u-5(i)(1)(D) .....................................................................................6

17 C.F.R. § 240.10b5-1 (Rule 10b5-1)................................................................1, 9

Fed. R. Civ. P. 9(b) ...................................................................................................5

DEFENDANTS SEMTECH CORPORATION,
HOU, AND LIN'S REPLY ISO MOTION TO
DISMISS - CASE NO. 2:25-CV-01474-MCS-JC

## I.    **INTRODUCTION**

Plaintiff's Opposition proves one thing: the Consolidated Complaint ("CC") rests entirely on conjecture. Notwithstanding public information to the contrary, Plaintiff speculates that Nvidia "abandoned" the NVL36x2 configuration in October 2024. Then, without any confidential witnesses, internal documents, or properly alleged facts, the CC makes an extraordinary leap to speculate that Defendants knew about Nvidia's purported shift and a change in market demand for active copper cables ("ACC") and made materially false or misleading statements to investors about their expectations for ACC. To defend this narrative crafted from whole cloth, the Opposition resorts to misconstruing and obfuscating the information available to market and relies on demonstrably inapplicable case law.

Plaintiff's claims are fundamentally deficient for other reasons. Statements made by analysts, not Defendants, cannot be challenged under *Janus*. The Opposition misstates the law on this point. And the Opposition fails to argue around (because it cannot) the fact that many of the challenged statements were forward-looking within the PSLRA's safe harbor and all are non-actionable opinions.

As to scienter, Plaintiff's central thesis that Defendants were motivated by an upcoming secondary offering is contrary to law. Even considered holistically with Lin's trades executed under a Rule 10b5-1 plan (entered *before* the class period), the CC does not allege a cogent and compelling inference that Defendants intentionally misled investors.

## II.    **DISCUSSION**

### A.    No Challenged Statement Was False or Misleading When Made.

***Kuo report***. The heart of Plaintiff's claims is the October 1, 2024 Kuo report that Nvidia was purportedly "halting development" of the NVL36x2 rack configuration. From this public speculation, the CC jumps to the factually unsupported conclusion that Nvidia did "discontinue" the configuration, and that

-1-

DEFENDANT SEMTECH CORPORATION,
HOU AND LIN'S REPLY ISO MOTION TO
DISMISS - CASE NO. 2:25-CV-01474-MCS-JC

Defendants' statements about what they were seeing in the market and their ACC expectations were false. *E.g.*, ¶ 123. Nothing in the Opposition changes the fact that Kuo's report was unsourced and itself emphasized that Nvidia made frequent changes to its product roadmaps. Mot at 9. The CC does not contain a single confidential witness ("CW") or internal document suggesting that Defendants had information internally that ran contrary to what they were telling investors. *Id.* at 11. And documents appropriately before the Court reflect information available to the market completely inconsistent with Plaintiff's theory. *Id.* at 10-11. At its core, Plaintiff's claim is that Defendants should have or must have seen something else in the market—but they do not have a single *fact* to support this.

Instead, Plaintiff argues that Semtech's February 7, 2025 8-K revising its ACC estimates can be read backwards as an admission that the "Kuo Report had been right all along." Opp. at 3. Plaintiff contends that in the February 7 disclosure, "Semtech admitted its 'server rack customer' had abandoned the rack architecture requiring CopperEdge . . ." *Id.* at 10. Semtech made no such admission. In fact, the Company specifically stated that "[b]ased on continued collaboration on future generation server rack designs, *its CopperEdge portfolio is expected to be included in these designs*." Reply Ex. 1 at 2 (emphasis added). Plaintiff cannot conjure up a fraud claim based on fabricated disclosures and the Court is not required to accept this blatant misstatement of the 8-K. *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020).

Next, Plaintiff acknowledges that Meta's Catalina is a dual-rack NVL36x2 platform, and that Meta showcased this platform at OCP *after* the Kuo report reported on the dual rack's alleged demise. ¶¶ 95, 101; Opp. at 10. But he argues that Meta's platform "was a customized rack, rendering Nvidia's support irrelevant." Opp. at 10 (emphasis omitted). This obfuscates what Plaintiff has not and cannot plead around: whether custom or not, the Meta platform used CopperEdge components. Plaintiff's

DEFENDANT SEMTECH CORPORATION, HOU AND LIN'S REPLY ISO MOTION TO DISMISS - CASE NO. 2:25-CV-01474-MCS-JC

argument that the market "had embraced the NVL72, which had no use for ACCs (and therefore CopperEdge)" (*Id.* at 8) cannot be squared with his own allegations that Meta's platform used CopperEdge.

Lacking facts, the Opposition contends falsity is bolstered by the purportedly short time between the challenged statements and the February 7 disclosure, citing *Macomb County Employees' Retirement System v. Align Technology, Inc.*, 39 F.4th 1092, 1097 (9th Cir. 2022). Opp. at 9. Nothing in *Macomb* suggests that timing alone is indicative of falsity. The plaintiffs' allegations there rested upon "[m]ultiple reports from former employees," allegations of "specific systems and reports that executives allegedly reviewed," and even so the Ninth Circuit affirmed dismissal on falsity grounds. *Id.* at 1097, 1101 & n.1.

***Public sources***. Sources incorporated by reference to the CC or subject to judicial notice confirm the hollowness of Plaintiff's claims. Plaintiff urges the Court not to consider these materials. ECF No. 59. But alleged false statements "must be analyzed in context" and these sources are offered for exactly that purpose—to show publicly available information in the marketplace about the NVL36x2 racks. *In re Eventbrite*, 2020 WL 2042078, at *7.

These sources confirm what Plaintiff seeks to obscure: that the purported demise of the NVL36x2 rack was not borne out in the market:

- After Meta demonstrated a platform using a NVL36x2 configuration at OCP, one of Plaintiff's own cited analyst reports noted that the "NVL36x2 is Alive and Well." Ex. 7 at 1.

- On January 6, 2025, Nvidia's CEO gave a keynote speech, where he highlighted the NVL36x2 configuration. Mot. at 10; Ex. 5 at 6.

- After CES, one source noted that while "earlier reports claimed that Nvidia had canceled dual-rack 72-way GB200-based NVL36x2 systems [. . .] [a]pparently, this is not the case, and some companies either produce dual-rack NVL36x2 systems today or plan to do so in the future." Mot at 10; Ex. 4 at 3.

DEFENDANT SEMTECH CORPORATION, HOU AND LIN'S REPLY ISO MOTION TO DISMISS - CASE NO. 2:25-CV-01474-MCS-JC

In a deeply ironic turn, Plaintiff argues in discussing Exhibit 4 that "just because someone on the internet speculated . . . this does not become a reliable fact." RJN Opp. at 9. But Plaintiff's *entire case* is based on drawing unwarranted inferences from internet speculation. Plaintiff cannot concoct a false narrative and then object to Defendants' choice to put those sources in appropriate context.

Plaintiff also argues that these sources are not inconsistent with the CC because Plaintiff does not dispute that "Blackwell systems *could* be arranged in a 36x2 configuration"; the Kuo report's revelation was purportedly that Nvidia would stop "supporting" the configuration. RJN Opp. at 7, 9. This subtlety is nowhere in the CC, which alleges that Nvidia decided to "discontinue the NVL36x2." *E.g.*, ¶ 123. "It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss" (*Barbera v. WMC Mortgage Co.*, 2006 WL 167632, at *2 n.4 (N.D. Cal. Jan. 19, 2006)), much less by a brief in opposition to a request for judicial notice. Regardless, Plaintiff does not advance a single factual allegation indicating that Nvidia did, in fact, stop "supporting" NVL36x2.

***Director resignation***. Finally, Plaintiff contends that the resignation of a Semtech director on November 26, 2024 shows falsity, citing *Brown v. China Integrated Energy*, and *In re American Apparel, Inc. Shareholder Litigation*. Opp. at 8-9. Plaintiff's description of these cases is badly misleading. *Brown* was about the resignation of the company's auditor because it had doubts about management's representations. 875 F. Supp. 2d 1096, 1102, 1116 n.78 (C.D. Cal. 2012). Likewise, *American Apparel* involved an auditor's resignation because it was no longer willing to rely on management's representations. 2013 WL 10914316, at *7, *28 (C.D. Cal. Aug. 8, 2013). The resignation of an auditor because it could not rely on management is wholly distinct from the unremarkable decision of a director to step off a board without any indication of issue.

DEFENDANT SEMTECH CORPORATION, HOU AND LIN'S REPLY ISO MOTION TO DISMISS - CASE NO. 2:25-CV-01474-MCS-JC

B. <u>Plaintiff's Challenge to Analyst Paraphrases Fails.</u>

Plaintiff's challenge to analyst paraphrases falls well short of the stringent pleading requirements of the PSLRA and Rule 9(b). Mot. at 5-7. Under *Janus*, only the "maker" of the challenged statement can be liable; here, the makers of the challenged statements were the analysts, not Defendants. *Id.* at 7 (citing *Janus Capital Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011)).

Nearly all of the cases Plaintiff cites were decided pre-*Janus* and cannot be reconciled with the Supreme Court's decision. Opp. at 10-13. In *Janus*, the Court held that only the person with "ultimate authority" over the challenged statement is a "maker" and specifically rejected the proposition that someone who "provides the false or misleading information that another person then puts into the statement" can be liable. 564 U.S. at 142, 145.

Plaintiff relies on a pre-*Janus* ruling in *Nursing Home Pension Fund, Local 144 v. Oracle Corporation*, 380 F.3d 1226, 1235 (9th Cir. 2004). But *Oracle* did not involve paraphrases: defendants there "acknowledge[d] that the analysts' reports 'simply repeat' other statements at issue in [the] litigation that were quoted directly." *Id.* at 1234. Here, by contrast, there are no direct quotations reprinted by the analysts. While Plaintiff contends that "Hou repeated the substance of Statements 1 and 2 in the Q3 Earnings Call" these are different statements, made over a month apart. Opp. at 12.

Plaintiff's post-*Janus* cases shed no light. *In re Nimble Storage Securities Litigation* discussed the analyst reports in a footnote that did not mention *Janus*, and the court dismissed plaintiff's challenge to these statements. 2017 WL 4355570, at *3 n.9 (N.D. Cal. Oct. 2, 2017). *In re Apple Inc. Securities Litigation* involved a specific statement—quoted in the complaint—made to an analyst, who then "reprinted" the statement verbatim. 2020 WL 2857397, at *18 (N.D. Cal. June 2, 2020). Here, the CC is entirely missing what was purportedly said to the analysts, and by whom. Plaintiff has no idea of the source, claiming that either Hou *or* Lin (Opp. at 12) or Hou *and* Lin

-5-

DEFENDANT SEMTECH CORPORATION, HOU AND LIN'S REPLY ISO MOTION TO DISMISS - CASE NO. 2:25-CV-01474-MCS-JC

together (Opp. at 11) made Statements 1, 7, and 8. This is unacceptable under the PSLRA. Plaintiff has leveled serious accusations against Hou and Lin individually. Plaintiff cannot simply wave his hands and claim that one or the other of them must have made a statement that was the basis of analyst commentary.

C.      Nearly All Challenged Statements Fall within the Safe Harbor.

All of the challenged statements from the November 25, 2024 earnings call (Statements 3-6) and three of the challenged analyst report statements (Statements 2, 7, and 8) were forward-looking within the PSLRA's safe harbor. Mot. at 14-16. Plaintiff contends that Defendants cannot "convert" an alleged misrepresentation into a forward-looking statement "simply by following it with a quintessential forward-looking statement: one forecasting future growth." Opp. at 13 (citations omitted). But these challenged statements articulate expectations for future ACC growth and the assumptions underlying those forecasts. 15 U.S.C. § 78u-5(i)(1)(D). Plaintiff has not identified any separable assertions about present circumstances.

Indeed, "any announced 'objective' for 'future operations' *necessarily* reflects an implicit assertion that the goal is achievable based on current circumstances"—that is not enough to take a statement outside of the statutory safe harbor. *Wochos v. Tesla*, 985 F.3d 1180, 1192 (9th Cir. 2021) (emphasis in original). Likewise, to the extent there are any "present fact[s]" in Statements 2-8 they are merely assumptions underlying the forward-looking guidance about ACC expectations.[1]

Furthermore, Plaintiff's claim that Defendants "concede their statements to analysts lacked any cautionary language" misses the point. Opp. at 14. Analyst reports

---

[1] Plaintiff's cited cases are not to the contrary. *In re Twitter, Inc. Securities Litigation* concerned a challenge to a statement that a particular trend had "already turned around." 2021 WL 4166725, at *1 (N.D. Cal. Sept. 14, 2021). *Rodriguez v. Gigamon Inc.* was pre-*Wochos*, and the challenged statement contained a non-forward-looking portion referring to present business conditions. 325 F. Supp. 3d 1041, 1050 (N.D. Cal. 2018).

DEFENDANT SEMTECH CORPORATION, HOU AND LIN'S REPLY ISO MOTION TO DISMISS - CASE NO. 2:25-CV-01474-MCS-JC

-6-

themselves do not include cautionary language precisely because it is the analyst—not management—who controls those statements. This only underscores why Plaintiff's analyst report challenge is inconsistent with the PSLRA. It also in no way changes that the substance of the paraphrases was forward-looking and thus protected under the safe harbor, even if these statements could be attributed to Defendants—because Plaintiff does not plead "actual knowledge" that any statement was false or misleading. Mot. at 15-16.

As to the Q3 2025 earnings call, the cautionary language was not boilerplate. Opp. at 14. Semtech specifically identified the risk that "some of our customers can stop incorporating our products into their own products with limited notice to us," that "adoption rates" of applicable products could change, and that "reduction in sales to any major customer" could adversely affect the company's financial condition. Mot. at 15. By contrast, in Plaintiff's cited *In re Illumina* case, the court held that risk factors were insufficient where the company did not identify any specific factor whose occurrence or non-occurrence was unknown. 2018 WL 500990, at *4 (S.D. Cal. Jan. 22, 2018).

      D.      <u>The Challenged Statements Are Opinions.</u>

All of the challenged statements should also be dismissed as opinion statements for which Plaintiff fails to meet requirements set forth in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015). Mot. at 16-17. In response, Plaintiff only mentions Statements 1 and 7, apparently conceding that the others are not actionable. Plaintiff cites *Glazer Capital Management, L.P. v. Forescout Technologies, Inc.* for the proposition that an opinion statement can be misleading where it "'affirmatively create[d] an impression of a state of affairs' that did not 'fairly align[ ] with the information in [defendant's] possession.'" Opp. at 15 (citing 63 F.4th 747, 771 (9th Cir. 2023)). But *Glazer* illustrates what is missing here—any factual allegations of information in Defendants' possession that differed

from their statements.[2]

E.     Plaintiff Fails to Plead Scienter.

Plaintiff has no factual allegations from CWs, documents, or anything else suggesting knowing wrongdoing. Mot. at 21. The Opposition offers only speculative assertions and ignores governing law.

***Secondary offering***. Plaintiff argues that when Hou, a "Lion Point-picked director" became CEO, he noted reducing debt as a top priority. Opp. at 17-18. From this, Plaintiff theorizes that Defendants were motivated to conduct a secondary offering at an inflated price. But Lion Point's holdings in Semtech had dropped to zero even before the class period (Mot. at 19, n.5) and Plaintiff does not allege otherwise. Plainly, the debt priorities of an entity with *no interest* in the Company do nothing to support a fraud claim.

In addition, Plaintiff's theory is contrary to law. Plaintiff makes no mention of *Rigel* or *Webb*. These controlling cases hold that allegations of routine corporate objectives like "the desire to obtain good financing" or "boost the company's profitability and stock prices" do not, without more, support an inference of scienter. *In re Rigel Pharmaceuticals, Inc. Sec. Litig*, 697 F.3d 869, 884 (9th Cir. 2012) (citations omitted); *Webb v. Solarcity Corp.*, 884 F.3d 844, 856-67 (9th Cir. 2018).[3]

***Stock sales***. Plaintiff does not dispute that Hou—who is alleged to have made most of the challenged statements—did not trade during the class period. This weighs

---

[2] As to Statement 7, Plaintiff does not engage with Defendants' cases that "on track" statements are inactionable puffery. Mot. at 17.

[3] Plaintiff's in-circuit authority supports Defendants. Opp. at 18 (citing *In re Portal Software, Inc. Sec. Litig.*, 2005 WL 1910923, at *12 (N.D. Cal. Aug. 10, 2005)). In discussing motivation to conduct a secondary offering at an inflated price, the *Portal Software* court noted that "in the Ninth Circuit, such motive pleading must be combined with allegations of other 'red flags' to be probative" and that plaintiffs' other allegations lacked particularity and "cannot be combined with this alleged motive to establish a strong inference of scienter." *Id.*

DEFENDANT SEMTECH CORPORATION,
HOU AND LIN'S REPLY ISO MOTION TO
DISMISS - CASE NO. 2:25-CV-01474-MCS-JC

against any inference of scienter. Mot. at 20.

As to Lin, Plaintiff argues that after setting up trades under a Rule 10b5-1 plan, he was purportedly motivated to make false statements to inflate the stock price. Opp. at 19-20. But as Plaintiff admits, Lin entered into the trading plan *before* the Kuo report; Plaintiff makes no claim that Lin had inside information when the plan was established. Plaintiff's suggestion that the mere existence of the trading plan provides a motivation to defraud is untethered from fact. This is precisely the sort of generic claim that could be made against any officer that the Ninth Circuit consistently rejects. Mot. at 19-21.[4]

*Timing*. Next, Plaintiff points to the timing of the February 7 disclosure as purportedly indicative of scienter. Opp. at 20-21. This theory is not pled in the CC, and even if it were, it does not show scienter any more than it shows falsity. Plaintiff ignores that the February 7 disclosure explained that the updated expectations were based on "recent feedback from a server rack customer" (¶ 139) and the context of this industry, which Defendants told investors was "dynamic." ¶ 102.

*Ecosystem engagement*. Plaintiff further argues that the challenged statements included claims by Defendants that they "had in-depth knowledge of the ecosystem." Opp. at 20-21. But Defendants' customer engagement scarcely means that they had real-time knowledge of what other participants in the marketplace—including Nvidia and end-users of server racks—were going to do, nor did Defendants ever claim to have such knowledge. And indeed, Plaintiff's cited cases (Opp. at 21) all concerned statements about a company's *own* sales or operations information, not third-party market participants.

*Director resignation*. Plaintiff advances unadorned speculation that Hankin's

---

[4] *Indiana Public Retirement System v. Pluralsight, Inc.* is not to the contrary. 45 F.4th 1236, 1266 (10th Cir. 2022). That out-of-circuit case held only that a 10b5-1 plan did not "per se rebut an inference of scienter." *Id.*

DEFENDANT SEMTECH CORPORATION, HOU AND LIN'S REPLY ISO MOTION TO DISMISS - CASE NO. 2:25-CV-01474-MCS-JC

resignation supports an inference of scienter. Opp. at 21. In fact, the 8-K announcing Hankin's resignation stated that "Mr. Hankin's decision to resign from the Board was not due to any disagreement with the Company . . ." Reply Ex. 2 at 3.

Even a holistic consideration of the scienter allegations does not support any inference of scienter, let alone a cogent and compelling one.

Dated:  September 2, 2025                                        SIDLEY AUSTIN LLP


By: */s/ Sara B. Brody*
Sara B. Brody

*Attorneys for Defendants Semtech Corporation, Hong Q. Hou, Mark Lin*

DEFENDANT SEMTECH CORPORATION, HOU AND LIN'S REPLY ISO MOTION TO DISMISS - CASE NO. 2:25-CV-01474-MCS-JC

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

The undersigned, counsel of record for Semtech Corporation, Hong Q. Hou, and Mark Lin, certifies that this brief contains 2,979 words, which complies with the word limit of L.R. 11-6.1 and Rule 9(d) of the Court's Civil Standing Order.

Dated: September 2, 2025                    SIDLEY AUSTIN LLP


By: */s/ Sara B. Brody*
Sara B. Brody

*Attorneys for Defendants Semtech Corporation, Hong Q. Hou, Mark Lin*