Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
400 Concar Drive
San Mateo, CA 94402
(650) 781-0025
jake@blockleviton.com

*Counsel for Lead Plaintiff Luis Collazos*
*And Lead Counsel for the Class*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SEMTECH CORPORATION SECURITIES LITIGATION<br><br>This Document relates to:<br><br>ALL ACTIONS | Master File No.: 2:25-cv-01474-MSC-AYP<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL ROTH CAPITAL PARTNERS' COMPLIANCE WITH RULE 45 SUBPOENA *DUCES TECUM***<br><br>Judge: Hon. Anna Y. Park<br>Hearing: March 10, 2026<br>Time: 9:30 a.m.<br>Courtroom: Courtroom 750<br>Non-Expert Discovery Cutoff: October 16, 2026<br>Pretrial Conference: TBD<br>Trial: TBD |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, pursuant to Federal Rule of Civil Procedure 37 and Civil Local Rule 37-2, Lead Plaintiff seeks an order from this Court to compel Roth Capital Partners ("Roth") to produce documents in response to Request No. 1 of Lead Plaintiff's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated December 2, 2025 (the "Subpoena").

This Motion is based upon this Notice of Motion; Lead Plaintiff's sections of the joint stipulation required by Civil Local Rule 37; the Declaration of Michael D. Gaines ("Gaines Decl."), including the declaration pursuant L.R. 37-2.2 that Roth failed to provide its portion of the joint stipulation in a timely manner under L.R. 37-2.2; and upon such other argument, evidence, and documents as may be presented to the Court in connection with this motion.

This Motion is made following the conferences of counsel pursuant to L.R. 37-1 that took place on January 5 and 29, 2026. Lead Counsel notified Roth on February 3, 2026 that Lead Plaintiff intended to move to compel Roth's production of documents in response to Request No. 1, but received no response. On February 6, 2026, Lead Counsel shared Lead Plaintiff's portions of the required joint stipulation and again received no response from Roth, despite informing Roth of the requirements of Civil Local Rule 37. As a result, Lead Plaintiff now files this Motion to Compel and respectfully requests that the Court grant the relief requested.

# TABLE OF CONTENTS

I.    INTRODUCTORY STATMENT ...................................................................1

II.   ARGUMENT.........................................................................................4

    A.    Relevant Procedural Background .......................................4

    B.    Legal Standard ........................................................6

    C.    Request No. 1 Seeks Relevant and Proportional Discovery ...........................................7

    D.    Roth is Required to Conduct a Reasonable Search and Produce Documents Responsive to Request No. 1.........................................10

## I. INTRODUCTORY STATMENT

Lead Plaintiff Luis Collazos respectfully submits this motion to compel compliance with Request No. 1 of the Subpoena Duces Tecum served on Roth Capital Partners ("Roth") on December 8, 2025 (the "Subpoena"). *See* Ex. 1 (Roth Subpoena and Schedule A dated Dec. 3, 2025) to Declaration of Michael D. Gaines ("Gaines Decl.").

This is a securities fraud class action arising from statements by Defendant Semtech's CEO on November 25, 2024 that the market opportunity for Semtech's CopperEdge chips remained unchanged, despite industry analyst reporting that Nvidia had discontinued development of the NVL36x2 rack-scale configuration—the primary use case driving CopperEdge demand. *See* Gaines Decl. Ex. 3 (Order Granting in Part & Denying in Part Mot. to Dismiss Consol. Class Action Compl., ECF No. 72) at 16-17; Gaines Decl. Ex. 4 (Consol. Compl., ECF No. 51), ¶¶126-131.

A few weeks after the November 25, 2024 statements, Semtech conducted a desperately needed $661 million secondary offering, which reduced Semtech's crippling debt load. Gaines Decl. Ex. 4, ¶19. In early January 2025 Semtech's CEO spoke to a Roth analyst while attending CES, a tradeshow. The Roth analyst published a report summarizing those discussions with Semtech's "Mgmt.", which included statements materially identical to the November 25, 2024 statements deemed actionable by the Court. *See id.* ¶132.

Three and a half weeks after Roth's CES report, Semtech admitted the market opportunity for its CopperEdge chips would no longer support its prior expectations. On this news, Semtech's stock plunged by over 30%. What Semtech's management actually said to the Roth analyst is relevant to the claims at issue in this case. Did Semtech's management provide a basis for their bullish statements or any details to support their comments? Or did they hedge on the expected market opportunity? These facts are all relevant to Defendants' state of mind (and therefore discoverable).

The Subpoena made four separate requests for documents within a Relevant Period of June 1, 2024 through February 15, 2024:

**Request For Production No. 1:**
All transcripts of, notes reflecting, and recordings of communications between You and Semtech that took place at CES, and that were subsequently summarized in Your January 11, 2025 report titled "SMTC: CES Underscores Data Center Strength With ACC and LPOs on Track."

**Request For Production No. 2:**
All documents and communications concerning CES during the Relevant Period.

**Request For Production No. 3:**
All analyst reports You published (including, but not limited to, those authored by Scott W. Searle) discussing Semtech during the Relevant Period.

**Request For Production No. 4:**
All communications You (including, but not limited to, Scott W. Searle) sent to or received from Semtech, concerning active copper cables, Semtech's CopperEdge product, and Nvidia during the Relevant Period.

Roth served Objections to the Subpoena on December 22, 2025, consisting of 15 boilerplate "General Objections" and a single specific objection:

IN THE ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT [ECF No.54], the District Court granted Defendant's Motion to Dismiss with respect to "Statement 7". That statement constituted the sole nexus between Roth and the subject matter of this litigation. As a result, the Subpoena seeks information from a third party (Roth) relating to information that has already been dismissed from the case.

*See* Gaines Decl. Ex. 2 (Roth's Objections to the Subpoena). Roth did not respond to any of the Subpoena's document requests. During a meet and confer call held January 5, 2026, counsel for Roth agreed to produce the analyst research reports sought by Request No. 3, but refused to search for or produce any documents responsive to the other three requests. As memorialized in a post-call email, counsel for Plaintiff proposed a compromise to minimize any burden on Roth: Roth could

search for and produce the few, specific documents sought in Request No. 1, and Plaintiff would forego production responsive only to Requests No. 2 and 4. *See* Gaines Decl. Ex. 5 (Email Chain).

After three weeks without response from Roth, counsel for Plaintiff followed up on January 28, 2026 by email, prompting a call from Roth's counsel the next day. *Id.* During the call on January 29, 2026, counsel for Roth rejected the compromise, reiterating that Roth would not produce any documents besides the analyst research reports responsive to Request No. 3. *Id.* Indeed, Roth has refused to even search for the existence of documents responsive to any of the other requests. *Id.* Plaintiff now comes to the Court seeking an order compelling Roth to comply with Plaintiff's proposed compromise: produce the documents sought in Request for Production No. 1. *Id.*

Roth likewise did not respond to Lead Counsel's correspondence about the filing of this Motion. On February 3, 2026, Lead Counsel notified Roth that Plaintiff would file a motion to compel if Roth continued to refuse compromises, but Roth's counsel did not respond. *Id.* On February 6, 2026, Lead Counsel shared Lead Plaintiff's portions of a Joint Stipulation pursuant to Civil L.R. 37-2 and informed Roth of the relevant requirements of Civil Local Rule 37, but Roth's counsel again did not respond. *Id.* As of the time of this filing, Roth's counsel has not responded to any correspondence about this Motion. Gaines Decl. ¶11. As a result, Roth has waived any objections to this Motion. *See Pom Wonderful LLC v. Coca-Cola Co.*, 2009 WL 10655253, at *1 (C.D. Cal. Sept. 16, 2009) ("These are the only objections defendant discusses in the Joint Stip. Thus, all other objections are deemed abandoned.").

Roth's refusal to even search for whether documents responsive to Request No. 1 exist is based upon a fundamental misunderstanding of its discovery obligations and the relevance of the documents sought to Plaintiff's allegations. The Court's determination that the Complaint fails to plead *with particularity* that one of

the defendants made the statements summarized and reported in Roth's January 11, 2025 analyst note does not render irrelevant an inquiry into who spoke to Roth's analyst and what was actually said. *See* Gaines Decl. Ex. 3, at 12-14.

That Semtech management made statements to sell-side analysts in January 2025 that were materially identical in substance to the allegedly false and misleading statements made in November 2024 is plainly relevant to (1) the falsity (or truth) of the November 25, 2024 statements, (2) the materiality of the November 25, 2024 statements, and (3) Semtech's CEO's state of mind when speaking on November 25, 2024—all necessary elements of a §10(b) claim. Plainly relevant is what (if any) support did Semtech's management provide to the analyst for its positive statements when, just over three weeks later, Semtech abruptly changed course. Whether the statements made on January 11, 2025 are actionable is separate and distinct from whether the information is relevant to claims in the case. Plaintiff has made every effort to avoid subjecting Roth to any undue burden, but Roth may not duck compliance because of a desire to avoid even the *de minimis* burden of a targeted search for specific, relevant documents in its possession.

## II.   ARGUMENT

## A.   Relevant Procedural Background

On October 7, 2025, this Court issued an Order granting in part and denying in part Defendants' motion to dismiss. Ex. 3. In the Order, the Court stated that Lead Plaintiff alleged sufficient facts to plead that two statements made by Defendant Hou on November 25, 2024 were false and misleading:

> That said, allow me to provide some assurances based on our ecosystem engagement. We have invested time with our customer and end users of the racks over the past few months. We reaffirmed our expectation of exceeding the floor case provided a couple quarters ago based on the firsthand information from the ecosystem. ("Statement 4").

> So that gives me the confidence that after the OCP that our floor case guided a couple of quarters ago is indeed a floor case. ("Statement 5").

Gaines Decl. Ex. 3 at 17.

"In both statements, Hou asserted that NVL36x2 was still viable, so CopperEdge's market opportunity was unchanged" and Lead Plaintiff pointed to "a number of facts indicating this was not true" including the Kuo Report published on October 1, 2024, three major end users announcing they were using the NVL72 configuration instead of the NVL36x2, and the abrupt departure of Board member Rockell Hankin. *Id.* The Court also emphasized that the Hankin resignation, Semtech's significant debt position, and the close temporal proximity between the statements in November, stock offering in December, and subsequent revelation in February support a strong inference of scienter. *Id.* at 19-20.

The Court dismissed claims regarding four statements (including Statement 7, reported by Roth) reported in analyst notes because "the complaint does not specify what Defendants said to any of the analysts" and three of the statements "only refer to things 'management' said" or "to Hou and Lin collectively." *Id.* at 12-13. But the Court also acknowledged that "allegations attributing the challenged statements to Defendants" could fix this issue. *See id.* The Court found that the because the complaint did not allege what the Defendants actually said during their conversations with analysts and those allegations were insufficient as a result. *Id.*

The Complaint alleges that on January 11, 2025, Roth issued a note reporting on a conversation had with Semtech management at the annual trade show CES (Statement 7): "***Mgmt. continues to underscore 1. Expansion above its prior $100M FY26 TAM***, 2. Increasing interest beyond initial NVDA (NC) design tractions, and 3. Continued 200Gbps port growth. ***In general, the ACC remains on track with NVDA's Blackwell***." Gaines Decl. Ex. 4, ¶132.

Three and a half weeks after "Mgmt" continued to "underscore . . . [e]xpansion above its prior" base case for it CopperEdge products, Semtech admitted that "net sales from its CopperEdge products used in active copper cables are expected to be lower than Company's previously disclosed floor case . . ." *Id.* ¶25. Semtech's stock price crashed by 31% on this news, wiping out close to $2 billion

in market capitalization. *Id.* ¶141.

Lead Plaintiff served the Roth Subpoena at issue on December 8, 2025. In its entirety, the Subpoena seeks narrow categories of documents relevant to the securities fraud claims and allegations at issue, and likely to be in Roth's possession, custody, or control. After two meet and confers over telephone, and a compromise offered by Plaintiff that Roth comply with Request No. 1 in exchange for Plaintiff foregoing compliance with Request Nos. 2 and 4, Roth continues to refuse to produce anything other than the analyst reports sought in Request No. 3 and as described in the accompanying Walker Declaration, has ceased correspondence with Lead Counsel. Plaintiff now seeks a Court order compelling Roth's compliance with the proffered compromise: production of "All transcripts of, notes reflecting, and recordings of communications between You and Semtech that took place at CES, and that were subsequently summarized in Your January 11, 2025 report titled '*SMTC: CES Underscores Data Center Strength With ACC and LPOs on Track.*'" Gaines Decl. Ex. 1. Roth's counsel has refused to submit its sections of the joint stipulation pursuant to L.R. 37-2 within the seven days provided by L.R. 37-2.2 and has thus waived any objections to this Motion.

**B.    Legal Standard**

On a motion to compel, "the moving party must first demonstrate that the information requested is within the scope of permissible discovery" and then the burden "shifts to the party opposing discovery to show that the information is being sought to delay bringing the case to trial, to embarrass or harass, is irrelevant or privileged, or that the person seeking discovery fails to show need for the information." *Erickson v. Builder Advisor Grp. LLC*, 2022 WL 1265823, at *2 (N.D. Cal. Apr. 28, 2022). The party resisting discovery must clarify, explain, and support its objections. *Associated Indus. Ins. Co. v. San Joaquin Hills Transp. Corridor Agency*, 2023 WL 2347387, at *2 (C.D. Cal. Feb. 13, 2023). "The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is

directed." *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 2013 WL 1508894, at *4 (N.D. Cal. Apr. 10, 2013).

In addition, any objections not raised in the required joint stipulation for discovery disputes under L.R. 37-2 "are deemed abandoned." *Pom Wonderful LLC v. Coca-Cola Co.*, 2009 WL 10655253, at *1 (C.D. Cal. Sept. 16, 2009) (citing 14 Moore's Federal Practice § 72.11 [1][a], at 72-52 (Matthew Bender 3d ed. 2009) ("A party's failure to present timely arguments, case law, or evidentiary materials to a magistrate judge prior to the magistrate's ruling, thereby depriving the magistrate of the opportunity to rectify any alleged errors, waives that party's right to present those arguments or materials to the district court on appeal from the magistrate's nondispositive order."); *Seven For All Mankind. LLC v. GenX Clothing. Inc.*, 2006 WL 5720346, at *3 (CD. Cal. 2006) ("The district judge will normally not consider arguments, case law, or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.") (internal quotation marks and citation omitted)).

## C.    Request No. 1 Seeks Relevant and Proportional Discovery

Discovery rules "are to be accorded a broad and liberal treatment" and document requests are "relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at *4 (C.D. Cal. Mar. 12, 2012). "[T]he scope of discovery through a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b)." *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016).

Here, Request No. 1 is plainly relevant to the claims and defenses at issue in this case. It narrowly seeks information that would "shed light" on the falsity, materiality, and scienter of Defendants' representations about Semtech's ACC growth, business opportunity with Nvidia, and Semtech's ability to exceed its full-

year 2026 floor case. *Toyota*, 2012 WL 3791716, at \*4. These are the core issues of the case and Roth has already indicated in its January 11, 2025 report that it had conversations with Semtech management about these exact topics. Gaines Decl. Ex. 4, ¶132.

By refusing to submit its portion of the joint stipulation for this Motion pursuant to L.R. 37-2, Roth has waived any of its objections to Plaintiff's request. *See Pom Wonderful*, 2009 WL 10655253, at \*1. Plaintiff even provided Roth's counsel with additional days beyond the seven-day deadline provided by L.R. 37-2.2, but Roth still did not respond. Aside from boilerplate objections untethered to the actual requests in the Subpoena (addressed *infra*), Roth's only initial objection was that "the District Court granted Defendant's Motion to Dismiss with respect to 'Statement 7,'" so the Subpoena "seeks information from a third party (Roth) relating to information that has already been dismissed from the case." Gaines Decl. Ex. 2. While this objection is now waived, it also lacks merit.

*First*, the Court found the Complaint fails to plead with particularity *that Defendants made* Statement 7 because Lead Plaintiff could not plead the identity of the speaker or the exact words said by Semtech management to Roth's analyst. Gaines Decl. Ex. 3 at 12-13. The Court did not "dismiss[] from the case" this "information." Gaines Decl. Ex. 2.

*Second*, the Court's dismissal of Plaintiff's §10(b) claim based on Statement 7 does not render information surrounding who said what to Roth irrelevant. Semtech's management spoke to the analyst about the very subject matter that is directly at issue in this case. What they said about the alleged ACC sales opportunity for Semtech is relevant to the claims in the case. Even in cases where certain categories of statements are dismissed, the remaining statements still "do not bound the limits of relevant or potentially relevant information." *Toyota*, 2012 WL 3791716, at \*9.  The court in *Toyota* rejected an attempt to limit discovery only "to evidence relevant to the seven actionable statements." *Id.* at \*10 (quoting *Upton v.*

NOTICE OF MOTION AND MOTION TO COMPEL ROTH
CAPITAL PARTNERS COMPLIANCE WITH RULE 45
SUBPOENA *DUCES TECUM*

8

*McKerrow*, 1996 WL 193807 at *2–4 (N.D. Ga. Feb. 20, 1996) (compelling production of documents relating to dismissed statements and associated allegations because "all the documents could contain, or could lead to the discovery" of information directly relating to issues remaining in the case)).

*Third*, separate and apart from whether Statement 7 can be pled as actionable, discovery into who spoke to Roth at CES and what they said about Semtech's Nvidia-related ACC opportunity is plainly relevant to at least three of the elements of Plaintiff's §10(b) claim: falsity, materiality, and scienter. Relevance in discovery is "broadly defined to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Valentine v. Crocs, Inc.*, 2024 WL 2193321, at *1 (N.D. Cal. May 15, 2024) (quoting *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020)).

Roth's analyst attended CES, an annual trade show, in January 2025 and reported on his conversation with Semtech management about the very subject at the heart of Semtech's allegedly false and misleading statements made in November 2024: "***Mgmt. continues to underscore 1. Expansion above its prior $100M FY26 TAM***, 2. Increasing interest beyond initial NVDA (NC) design tractions, and 3. Continued 200Gbps port growth. ***In general, the ACC remains on track with NVDA's Blackwell***." Gaines Decl. Ex. 4, ¶132. Moreover, these reported statements by Semtech's management closely mirror the false and misleading representations made in November 2024. What Semtech's management said to Roth in January 2025 about the Nvidia-related ACC market opportunity for CopperEdge is likely to shed light on whether Semtech's CEO spoke truthfully in November 2024, his state of mind when speaking, and the importance to investors of what he said. Did management provide any information or support for their claims? Did the analyst ask any questions to probe the statements?

Because Request No. 1 is plainly "within the scope of permissible discovery," the burden shifts to Roth to demonstrate why compliance is not warranted. But Roth

has provided no reason that Plaintiff's Request No. 1 (or, frankly, any of the foregone requests) seek documents that are unduly burdensome to produce or disproportional to the case. *See Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 7180662, at *3 (C.D. Cal. Nov. 16, 2015) ("[Defendant] has not met its burden of demonstrating that the burden or expense of this relevant discovery outweighs its likely use, instead offering only the conclusory assertion that it does so," and "[t]his is not enough to demonstrate that the requested discovery should not be granted.").

**D.    Roth is Required to Conduct a Reasonable Search and Produce Documents Responsive to Request No. 1**

Third parties subpoenaed for the production of documents are "under an affirmative duty to seek that information reasonably available to [them]." *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366 (D. Nev. 2019) (citing A. *Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006)). "This duty is discharged through the formulation and completion of a reasonable search conducted with due diligence." *Id.* (citing *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012)). Roth has likewise offered no explanation for why it continues to decline to even conduct a search for responsive documents.

Like their initial relevance objection, Roth's boilerplate general objections are also waived and without merit. *See Polaris Innovations Ltd. v. Kingston Tech. Co.*, 2017 WL 3275615, at *2 (C.D. Cal. Feb. 14, 2017) ("General or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections."). Roth's general objection "to the extent [the requests] seeks documents that are duplicative of discovery obtainable from the parties" does not preclude search and production. *LG Display Co. v. Chi Mei Optroelectronics Corp.*, 2009 WL 223585, at *3 (S.D. Cal. Jan. 28, 2009) ("The Court finds this argument [that documents are readily attainable from defendants] unavailing, particularly in light of Plaintiff's desire to test the accuracy and completeness of the defendants'

discovery responses and their denials that additional information exists."). Moreover, no one but Roth would hold its analyst's record of his conversation with Semtech management.

Indeed, without even knowing what Roth's burden actually entails, the Court cannot determine "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Polaris*, 2017 WL 3275615, at *6; 2015 Advisory Committee Notes (parties are not permitted "to refuse discovery simply by making a boilerplate objection that it is not proportional."). As a result, Roth's reliance on its "relevance objection to challenge proportionality" in its initial correspondence with Plaintiff was misplaced and cannot show that compliance with the Subpoena would be unreasonable. *See Commodity Futures Trading Comm'n v. Saffron*, 2020 WL 8172990, at *2 (D. Nev. Dec. 18, 2020). As a practical matter, Request No. 1 likely seeks production of no more than a handful of documents.

## III.    CONCLUSION

Roth has no meritorious objection to producing documents in response to Request No. 1 in Lead Plaintiff's document subpoena. For the foregoing reasons, the Court should grant Plaintiff's motion to compel Roth's reasonable search and production of documents responsive to Request No. 1.

February 17, 2026                    Respectfully submitted,

/s/ Jacob A. Walker
Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
400 Concar Drive
San Mateo CA 94402
(650) 781-0025
jake@blockleviton.com

Jeffrey C. Block (*pro hac vice*)
Michael D. Gaines (*pro hac vice*)
Zoe van Vlaanderen (*pro hac vice*)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
michael@blockleviton.com
zoe@blockleviton.com

*Counsel for Lead Plaintiffs and Lead Counsel for the Class*

Salvador E. Pérez (SBN 309514)
**Strumwasser & Woocher LLP**
1250 6th Street, Suite 205
Santa Monica, CA 90401
(310) 576-1233
sperez@strumwooch.com

*Local Counsel for Lead Plaintiff and the Class*

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

The undersigned, counsel of record for Lead Plaintiff Luis Collazos, certifies that this brief contains 3,564 words, which complies with the word limit of L.R. 11-6.1.

By:  */s/ Jacob A. Walker*
Jacob A. Walker

*Counsel for Lead Plaintiff and Lead Counsel for the Class*

NOTICE OF MOTION AND MOTION TO COMPEL ROTH
CAPITAL PARTNERS COMPLIANCE WITH RULE 45
SUBPOENA *DUCES TECUM*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2026, a true and correct copy of the foregoing Motion to Compel Roth Capital Partners' Compliance with Rule 45 Subpoena *Duces Tecum* was served on counsel for Roth Capital Partners, Richard Platt, via email at RPlatt@roth.com, via process server at Roth Capital Partners LLC, c/o Richard L. Platt, 888 San Clemente Dr. PH, Newport Beach, CA 92660, and via FedEx overnight delivery at the same address.

By: */s/ Jacob A. Walker*
Jacob A. Walker